UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
–BROWNSVILLE DIVISION–

| | | |
|---|---|---|
| CARDINAL HEALTH SOLUTIONS, INC., Plaintiff | § § § | |
| v. | § § | CIVIL ACTION NO. 1:07-CV-00111 |
| VALLEY BAPTIST MEDICAL CENTER and VALLEY BAPTIST MEDICAL CENTER–BROWNSVILLE Defendants | § § § § § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Cardinal Health Solutions, Inc. ("Cardinal Health") and Defendants/Counter-Plaintiffs Valley Baptist Medical Center and Valley Baptist Medical Center–Brownsville (together, "Valley Baptist") have filed cross motions for summary judgment on issues surrounding Defendants' breach of fiduciary duty counterclaim. Specifically, Cardinal Health filed a Motion to Dismiss/Motion for Summary Judgment on September 19, 2008, asking the Court, *inter alia*, "to dismiss Defendants' breach of fiduciary duty claim as a matter of law." (Doc. No. 90 at 17). Defendants filed a Motion for Partial Summary Judgment Regarding Fiduciary Duty on October 7, 2008, asking the Court to find that written contracts between Plaintiff and Defendants created "an agency/fiduciary relationship" between the parties "such that Cardinal Health owed Valley Baptist a fiduciary duty." (Doc. No. 110 at 1).

Having considered both Motions, as well as the parties' Responses and Replies (Doc. Nos. 119, 125, and 126), the Court finds as a matter of law that Cardinal Health did not owe a general fiduciary duty to Valley Baptist, and so GRANTS Plaintiff summary judgment on Defendants'

breach of fiduciary duty claim and thereby DENIES Defendants' Motion for Partial Summary Judgment Regarding Fiduciary Duty.

## Background[1]

Plaintiff's predecessor-in-interest, Cardinal Health 109, Inc., entered into separate written contracts, known as "Pharmacy Agreements," with Defendants Valley Baptist Medical Center and Valley Baptist Medical Center–Brownsville in 2003 and 2005, respectively. Under these agreements, Cardinal Health operated and managed all aspects of Defendants' pharmacy care services at their respective hospitals. These services included purchasing, dispensing, and administering drugs and biologicals to Defendants' patients, staffing pharmacy units, and a range of other services. At some point in late 2006, a dispute arose between the parties regarding the sums due under the terms and conditions of the Pharmacy Agreements, and Defendants began withholding payments to Plaintiff. Cardinal Health filed the instant suit on July 30, 2007, alleging breach of contract and requesting specific performance of the defendants in the form of payment to Cardinal Health of all monies allegedly owed. Defendants responded by filing an Answer and Counterclaim alleging breach of contract and asking for Declaratory Relief. (Doc. No. 9). On September 4, 2008, Defendants filed their First Amended Answer and Counterclaims, in which they asserted claims for breach of contract, fraud, and breach of fiduciary duty/confidential relationship, and a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO). (Doc. No. 77).

---

[1] The following factual summary is taken from Plaintiff's Original Complaint (Doc. No. 1), Defendants' Motion for Partial Summary Judgment (Doc. No. 68), and Plaintiff's Response to Defendants' Motion for Partial Summary Judgment Regarding Fiduciary Duty (Doc No. 119), as these documents taken together provide a balanced and informative narrative.

2

## Summary Judgment Standard

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The nonmoving party must go beyond the pleadings and provide specific facts showing that there is a genuine issue for trial. *Id.* at 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 587 (1986).

"Where the underlying facts are undisputed, determination of the existence . . . of fiduciary duties are questions of law." *Meyer v. Cathey*, 167 S.W.3d 327, 330 (Tex. 2005) (internal quotation omitted); *see also Nat'l Plan Admin'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 700 (Tex. 2007) (citing *Meyer* for the proposition that "[w]hether a fiduciary duty exists is a question of law"). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case. *Celotex*, 477 U.S. at 322–23.

## Discussion

For the purposes of this Order, the Court adopts Defendants' formulation of the question presented for review:

Did the Pharmacy Agreements between Valley Baptist and Cardinal Health create an agency/fiduciary relationship between Valley Baptist and Cardinal Health as a matter of law, such that Cardinal Health owed Valley Baptist a fiduciary duty?

(Doc. No. 110 at 1).

I.  **Defendants' Summary Judgment Argument**

Texas courts have held that certain relationships give rise to a fiduciary duty as a matter of law, including the relationship between principal and agent. *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007); *see Nat'l Plan Admin'rs, Inc.*, 235 S.W.3d at 700 ("An agency relationship imposes certain fiduciary duties on the parties.").[2] Valley Baptist has alleged in its pleadings, including its most recent Answer and Counterclaims, that "[i]n regard to the acquisition (purchase), dispensing, and accounting for (including inventory control of) drugs, and pursuant to the terms and conditions of the Pharmacy Agreements, Cardinal Health acted as an agent for VBMC and VBMC–Brownsville." (Doc. No. 121 at 33). Thus, Defendants' contend, as Valley Baptist's agent, Cardinal Health owed Valley Baptist a fiduciary duty. (Doc. 110 at 5).

Defendants cite Texas law for the proposition that "[a]gency is a consensual, fiduciary relationship between two parties, a principal [i.e. Valley Baptist] and an agent [i.e. Cardinal Health] where the agent agrees to act on the principal's behalf, subject to the principal's control, and the

---

[2]There is some confusion as to whether Defendants also contend that an *informal* fiduciary duty arose between the parties, in addition to a *formal* fiduciary duty based on an alleged agency relationship. Defendants in their Motion for Partial Summary Judgment Regarding Fiduciary Duty specifically note that Texas courts have recognized such informal fiduciary duties "where one person trusts in and relies upon another, whether the relation is a moral, social, domestic, or merely personal one." (Doc. No. 110 at 3–4) (quoting *Crim Truck & Tractor Co. v. Navistar Intn'l Transp. Corp.*, 823 S.W.2d 591, 593–94 (Tex. 1992). Defendants also include a footnote quoting a portion of their Answer and Counterclaims alleging that "Valley Baptist justifiably placed trust and confidence" in Cardinal Health. (*Id.* at 4 n.1). Understandably, Plaintiff addresses both kinds of fiduciary duty, formal and informal, in its Response to Defendants' Motion for Partial Summary Judgment Regarding Fiduciary Duty. (Doc. No. 119 at 8–17). Defendants again allude to the existence of an informal fiduciary duty in their Response to Plaintiff's Motion to Dismiss/Motion for Summary Judgment, urging the Court to deny Plaintiff's Motion because it "addresses only the existence *vel non* of an informal fiduciary duty" and ignores the alternative, or additional, ground advanced by Defendants, i.e. a formal fiduciary duty based on an agency relationship. (Doc. No. 126 at 39). This language certainly suggests that Defendants consider both kinds of fiduciary duty to be live issues in this case. Nonetheless, in their Reply to Plaintiff's Response, Defendants explicitly insist that "[t]he issue presented in Valley Baptist's Motion had nothing to do with the existence of an informal fiduciary duty." (Doc. No. 125 at 2). This is likely because Defendants cannot provide facts showing that there existed between the parties "a special relationship of trust and confidence [existing] prior to, and apart from, the agreement made the basis of the suit," a necessary element of an informal fiduciary duty. *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). In any case, the Court takes Defendants at their word on this matter, and so considers the existence of a *formal* fiduciary duty, based on alleged agency, to be the sole fiduciary duty at issue in this case.

4

principal confers on the agent the power to act on the principal's behalf." (Doc. No. 110 at 4). Defendants point to the following provisions of the Pharmacy Agreements as creating an agency relationship between Cardinal Health and Valley Baptist:

- "Cardinal Health will operate the Health Care Facility's [Valley Baptist's] patient care pharmacy service on the premises [of the hospitals] for the purpose of exclusively supplying . . . pharmacy services and Drugs . . . which are billed to patients and third party payors as Health Care Facility services." (Pharmacy Agreements, Preliminary Statements).

- "Cardinal Health shall, on behalf of the Health Care Facility, purchase all Drugs and perform the accounts payable function associated with the [Health Care Facility services]." (*Id.* at art. I, section 1.01(d)).

- Cardinal Health shall provide all Services in compliance with applicable federal, state, and local laws, ordinances, rules and regulations, with the written policies of the Health Care Facility, and the standards of all applicable accrediting bodies in effect on the Effective Date of this Agreement . . . and as they may be amended or modified during the course of this Agreement." (*Id.* at art. I, section 1.03(a)).

- "Cardinal Health shall ensure that its employees and contractors adhere to all applicable written rules and regulations established by the Health Care Facility." (*Id.* at art. I, section 1.03(b)).

- "The Health Care Facility shall be responsible for obtaining all necessary local, state and federal licenses and permits required for operation of the Pharmacy. Health Care Facility shall issue a Power of Attorney to Cardinal Health for the sole purposes of ordering and purchasing controlled substances on its behalf. In accordance with state or federal law, the Health Care Facility shall have primary responsibility for record keeping and security of controlled substances maintained within its premises . . . . As its agent, the Health care facility shall delegate to Cardinal Health through its pharmacist in charge . . . responsibility for maintaining proper record keeping and security requirements for controlled substances as required by applicable state, local and federal laws. (*Id.* at art. II, section 2.01(c)).

Applying the agency doctrine to the Pharmacy Agreements, Defendants conclude that these provisions, and the contracts as a whole, "leave no doubt that Cardinal Health agreed to act on behalf of VBMC and VBMC–Brownsville and subject to Valley Baptist's (right of) control." (*Id.*). Further, it "cannot be seriously disputed by Cardinal Health that Cardinal was, as concerns its duties

5

and obligations under the Pharmacy Agreement(s), the agent of Valley Baptist, and that this agency relationship gave rise to a formal fiduciary relationship whereby Cardinal health owed Valley Baptist a fiduciary duty under Texas law." (*Id.* at 4–5).

## II.     Plaintiff's Summary Judgment Argument

In its Motion to Dismiss and/or Motion for Summary Judgment, Plaintiff urges the Court to dismiss Defendants' breach of fiduciary duty claim as a matter of law. (Doc. No. 90 at 17). Addressing Defendants' apparent claim that there existed an "informal" fiduciary duty between Cardinal Health and Valley Baptist, Plaintiff cites Texas case law imposing an informal duty in a business transaction only when "a special relationship of trust and confidence [exists] prior to, and apart from, the agreement made the basis of the suit." *Id.* at 18 (quoting *Meyer v. Cathey*, 167 S.W.3d 327, 331 (Tex. 2005). To the extent that Valley Baptist "carefully reviewed and understood the terms and conditions of the Pharmacy Agreements prior to executing the contracts," Plaintiff contends, such a relationship did not exist and so Cardinal Health owed Valley Baptist no informal fiduciary duty. *Id.*

Plaintiff addresses Defendants' contention that an "agency/fiduciary relationship" existed between Cardinal Health and Valley Baptist–or that Cardinal Health owed Valley Baptist a "formal" fiduciary duty–in its Response to Defendants' Motion for Partial Summary Judgment Regarding Fiduciary Duty. (Doc. No. 119). Here, Plaintiff argues that 1) the Pharmacy Agreements contain no express agreement to create an agency relationship between the parties and 2) under Texas and Fifth Circuit law, the Agreements do not delegate to Valley Baptist the kind of control over Cardinal Health's performance of its contractual obligations sufficient to make Valley Baptist a principal and Cardinal Health its agent. *Id.* at 7–13. Without an agency relationship, Plaintiff concludes, there can

be no formal fiduciary relationship between Cardinal Health and Valley Baptist and so the Court should deny Defendant's Motion. *Id.* at 14.

### III. Analysis

To the extent that Defendants predicate their claim that Cardinal Health owed Valley Baptist a fiduciary duty on their contention that the Pharmacy Agreements created an agency relationship between the parties, the issue for this Court's decision is whether the Agreements in fact made Cardinal Health Valley Baptist's agent.

### A. Fiduciary Duty and Agency

Under Texas law, a "formal fiduciary relationship arises as a matter of law and includes relationships between attorney and client, principal and agent, partners and joint venturers." *Navigant Consulting, Inc. v. Wilkinson*, 508 F.3d 277, 283 (5th Cir. 2007). "Agency is a fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000); *see also Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549 (Tex.App.–Houston [14th Dist.] 2003, no pet.); *Royal Mortgage Corp. v. Montague*, 41 S.W.3d 721, 732 (Tex.App.–Fort Worth 2001, no pet.).

"An essential element of the principal–agent relationship is the alleged principal's right to control the actions of the alleged agent." *Walker Ins. Servs.*, 108 S.W.3d at 549; *see also* RESTATEMENT (3d) OF AGENCY § 1.01, cmt. f (2006). "Right of control" is analyzed variously throughout Texas and Fifth Circuit case law, oftentimes depending on the particular facts to which the principle is being applied. One court defines the particulars of a principal's right of control to include "the power to hire and fire and the power of supervision" over the agent's employees, and

suggests further that an "essential characteristic of an agency is the power of the agent to commit his principal to business relationships with third parties." *Procom Servs., Inc. v. Deal*, No. 3:02-CV-0600-BF, 2003 U.S. Dist. LEXIS 1956, at *6 (N.D. Texas Feb. 10, 2003). The Fifth Circuit, applying agency principles to determine whether a particular franchisee was the agent of its franchisor, framed its analysis in terms of whether the franchisor has "given consent for the branded stores [i.e. the franchisees] to act on its behalf and that the branded stores are subject to the control" of the franchisor, and concluded that since the contract language did not establish that the franchisor had "any participation in the daily operations of the branded stores nor that [the franchisor] participates in making personnel decisions," no agency relationship existed. *Arguello v. Conoco, Inc.*, 207 F.3d 803, 807 (5th Cir. 2000).

The most common language used to flesh out the right of control, however, typically references the principal's power to determine the "means and details" of the agent's work. Thus, the right of control "includes not only the right to assign tasks, but also the right to dictate the means and details of the process by which an agent will accomplish the task." *Walker Ins. Servs.*, 108 S.W.3d at 549; *see also Laredo Medical Group v. Lightner*, 153 S.W.3d 70, 72 (Tex.App.–San Antonio 2004, pet. denied); *Thomason v. Collins & Aikman Floorcoverings, Inc.*, No. 04-02-00870-CV, 2004 Tex.App. LEXIS 2823, at *17 (Tex.App.–San Antonio March 31, 2004, no pet.); *Royal Mortgage Corp.*, 41 S.W.3d at 733; *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex.App.–Houston [14th Dist.] 1997, no pet.); *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 687 (Tex.App.–Fort Worth 1996, no writ); *Johnson v. Owens*, 629 S.W.2d 873, 875 (Tex.App.–Fort Worth 1982, writ ref'd n.r.e.). Further, the "principal's extent of control over the details of accomplishing the assigned task primarily distinguishes the status of independent contractor from that of an agent." *Happy Indus.*

*Corp. v. Am. Specialties, Inc.*, 983 S.W.2d 844, 852 (Tex.App.–Corpus Christi 1998, pet. dism'd w.o.j.); *see also Royal Mortgage Corp. v. Montague*, 41 S.W.3d at 733; *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 90 (Tex.App.–El Paso 1998, no pet.).

In a recent case, a sister court in the Southern District looked to the Restatement (Second) of Torts for guidance on the types of actions that *do not* constitute a right of control for the purposes of establishing an agency relationship:

> A right of control requires more than a general right to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations . . . There must be such a retention of a right of supervision that the contractor is not entirely free to do the work in his own way.

*Emtel, Inc. v. Lipdlabs, Inc.*, No. H-07-1798, 2008 U.S. Dist. LEXIS 77597, at *18 (S.D. Tex. Sept. 30, 2008) (quoting the Supreme Court of Texas quoting RESTATEMENT (SECOND) OF TORTS § 414, cmt. c).

Finally, the Restatement (Third) of Agency also provides useful guidance on the meaning of right of control, especially in the context of a contract for services:

> Control is a concept that embraces a wide spectrum of meanings, [for example] a principal has the right to give interim instructions or directions to the agent once their relationship is established.
> ***
> The power to give interim instructions distinguishes principals in agency relationships from those who contract to receive services provided by persons who are not agents. In many agreements to provide services, the agreement between the service provider and the recipient specifies terms and conditions creating contractual obligations that, if enforceable, prescribe or delimit the choices that a service provider has the right to make . . . The service provider may be constrained by both the existence of such an obligation and the prospect of remedies for breach of contract. The fact that such an agreement imposes constraints on the service provider does not mean that the service recipient has an interim right to give instructions to the provider. Thus, setting standards in an agreement for acceptable service quality

9

does not mean that the service recipient has an interim right to give instructions to the provider.

RESTATEMENT (3d) OF AGENCY § 1.01, cmt. f (2006).

Taking these various permutations together, we can say that the right of control is an essential component of an agency relationship, and that this right includes the power to set tasks and to dictate the means and details of the agent's work to accomplish those tasks; these means and details include the power to hire and fire and the power of supervision over the agent's employees, to participate in the daily operations of the agent's work, and to give the agent interim instructions once work has begun that go beyond the power to order the work stopped or resumed, to inspect its progress or receive reports, to make suggestions or recommendations which need not necessarily be followed, to prescribe alterations, and to set standards for acceptable service quality. Finally, the right of the agent to commit the principal to contracts with third parties is also an important indicator of an agency relationship.

**B.     The Case Law**

Neither Plaintiff nor Defendants cite any cases applying agency or fiduciary duty principles to contracts like the Pharmacy Agreements or to the relationship between pharmaceutical service providers and hospitals, nor has the Court found any.[3] Nonetheless, a number of cases contain factual scenarios sufficiently similar to the present case to provide useful guidance.

In *Emtel, Inc. v. Lipidlabs, Inc.*, No. H-07-1798, 2008 U.S. Dist. LEXIS 77597 (Sept. 30, 2008), a sister court in the Southern District of Texas applied agency principles in a patent

---

[3] Plaintiff does, however, cite several cases whose facts, if not especially analogous, are nonetheless roughly comparable. Defendants, on the other hand, though quick to dismiss Plaintiff's cases as irrelevant, offer the Court not a single case even suggesting that contracts like the Pharmacy Agreements create a fiduciary duty, offering in their stead nothing but a series of conclusory statements. (*See* Doc Nos. 110 and 125).

infringement suit to determine whether individual physicians contracting with a medical lab to perform medical diagnoses as part of a "telemedicine" service providing medical services to patients in remote locations were agents of that lab, thereby constituting a single entity in violation of certain telemedicine patents held by a third party. *Id.* at *11. The defendants acknowledged that they contracted with the physicians, required that the medical services conform with generally accepted professional standards, and provided administrative support. *Id.* Nonetheless, the court concluded that these facts, even combined with contractual provisions requiring that the physicians purchase liability insurance, schedule times to be on call, and use certain administrative steps, were insufficient to create a fact issue on agency, as they "only set basic parameters for the physicians to follow that do not affect, much less control, how they exercise their judgment in performing their medical work." *Id.* at *19. The court went on to observe that "[a]gency cases in the medical context confirm that the relationship between the [medical labs] and the physicians is not one of principal and agent" for the same reasons that physicians are not agents of the hospitals in which they work: "[B]ecause a hospital is interested in only the results, and the contracting party independently determines the details of the method by which the desired results are attained, an independent contractor relationship exists" and the requisite direction and control of the physicians' work is absent. *Id.* at *19–20.

A Texas state-court case faced agency issues in the context of a suit by a physician who had sold his medical practice to a larger medical group and was now claiming that the group had breached its fiduciary duty to the physician by failing to adequately collect his accounts receivable. *Laredo Medical Group v. Lightner*, 153 S.W.3d 70, 71 (Tex.App.–San Antonio 2004, pet. denied). The plaintiff claimed that Defendant owed him a duty of good faith and fair dealing because the

11

power of attorney provisions within the parties' employment and asset-purchase agreements created an agency relationship. *Id.* at 72. The court rejected this argument, noting that "[a]lthough the appointment of an attorney-in-fact ordinarily creates an agency relationship, there is no agency relationship here because there is no evidence [the practice group] was under [Plaintiff's] control." *Id.* This holding underscores the importance courts place on evidence that "the principal have the right to assign the agent's task and *to control the means and details by which the agent will accomplish the task*," even in relationships involving power of attorney, which ordinarily imply agency and therefore fiduciary duties. *Id.* (emphasis added).

Cases involving the relationship between a franchisor and a franchisee emphasize similar considerations. In *Smith v. Foodmaker, Inc.*, 928 S.W.2d 683, 684 (Tex.App–Ft. Worth 1996, no writ), parents of a restaurant employee murdered during a robbery at the restaurant by an off-duty co-worker brought a wrongful death action against, *inter alia*, the restaurant's franchisor. Plaintiffs contended that the company owning the restaurant and the restaurant's franchisor had an agency relationship, making the franchisor vicariously liable for the negligence of its franchisee. *Id.* at 687. The court rejected this theory, noting first that the franchise agreement explicitly stated that the franchisee "shall not be deemed an agent" of the franchisor. The court went on to observe that independent of what the contract said, although the restaurant's parent company, "as franchisee, was required to follow certain corporate standards, the day-to-day operation of the restaurant . . . was delegated fully to [the franchisee]." *Id.* The court also cited authority emphasizing that a "franchisor's interest in the reputation of its entire system allows it to exercise certain controls over the enterprise without running the risk of transforming its independent contractor franchisee into an agent." *Id.* at 688 (quoting *Cislaw v. Southland Corp.*, 4 Cal.App.4th 1284, 1294–95

(Cal.App.4.Dist. 1992)). In this context, the fact that the franchisee was responsible for "hiring and firing all employees, setting their wages, and giving them their day-to-day instructions" weigh heavily against the existence of an agency relationship. *Id.*

The Fifth Circuit has analyzed the relationship between franchisor and franchisee along similar lines. In *Arguello v. Conoco, Inc.*, 207 F.3d 803 (5th Cir. 2000), Hispanic and African-American consumers filed suit against Conoco alleging racial discrimination at stores not owned, but branded, by Conoco. *Id.* at 805, 806. The district court found no agency relationship between Conoco–the franchisor–and the franchisee stores at which the discrimination allegedly took place, and Plaintiffs appealed. *Id.* at 806. The Fifth Circuit focused its analysis on the Petroleum Marketing Agreements ("PMA") into which the independently owned stores entered with Conoco, which allowed them to market and sell Conoco brand gasoline and supplies in their stores. *Id.* at 807. Plaintiffs argued that the PMAs gave Conoco control of the franchise stores because the PMAs required the franchise stores to maintain their businesses according to the standards set forth in the PMAs and instructed the franchise stores that "all customers shall be treated fairly, honestly, and courteously." *Id.* Further, Conoco would conduct random inspections of the franchise stores to determine if business was being conducted according to the standards of the PMA. *Id.* If the franchise stores did not adhere to these standards, Conoco had the power to withdraw its brand. *Id.*

The Court found as a matter of law that no agency relationship existed between Conoco and the Conoco-branded stores because the language of the PMAs did not establish sufficient control by Conoco over the franchise stores. *Id.* at 808. The Court first observed that the PMAs explicitly provided that Conoco and its branded stores "are not . . . agents of each other in any sense whatsoever." *Id.* (quoting the Petroleum Marketing Argeements). The Court then compared the

language of the PMAs to a franchise agreement between American Dairy Queen Corporation ("ADQ") and its franchisees that provided, *inter alia*, that the franchise building should be constructed, equipped, and maintained in accordance with ADQ's specifications. *Id.* at 808 (discussing *Neff v. Am. Dairy Queen Corp.*, 58 F.3d 1063 (5th Cir. 1995)). In that case, the Fifth Circuit held that this language "did not establish sufficient control on ADQ's part such that ADQ can be said to 'operate' the San Antonio stores." *Neff*, 58 F.3d at 1067. Similarly, the *Arguello* Court held, the "language of the PMA, while offering guidelines to the Conoco-branded stores, does not establish that Conoco, Inc. has any participation in the daily operations of the branded stores nor that Conoco, Inc. participates in making personnel decisions." *Arguello*, 207 F.3d at 808. "Therefore," the court concluded, "we find that there is no agency relationship between Conoco, Inc. and the branded stores in question." *Id.*

## C.   Application

In light of the standard for finding an agency relationship and its application in the relevant case law, the key question before the Court is: Did the Pharmacy Agreements between Valley Baptist and Cardinal Health create an agency/fiduciary relationship between Valley Baptist and Cardinal Health as a matter of law, such that Cardinal Health owed Valley Baptist a fiduciary duty? This Court holds that as a matter law, the Pharmacy Agreements did not create an agency relationship between Cardinal Health and Valley Baptist, and so Cardinal Health did not owe Valley Baptist a general fiduciary duty.

We first note that unlike in the franchise cases discussed *supra*, the Pharmacy Agreements do not contain any language explicitly disclaiming an agency relationship between the parties. In

fact, Article II, section 2.01(b) does seem to refer to Cardinal Health as Valley Baptist's "agent."[4] Nonetheless, to the extent that the Court could find that this language creates a fiduciary duty between the parties, such a duty would only exist within the limited scope implied by this specific subsection. Thus, Cardinal Health may properly be considered Valley Baptist's agent, if at all, only with respect to Cardinal Health's "responsibility for maintaining proper record keeping and security requirements for controlled substances as required by applicable state, local and federal laws" as a part of its responsibility for "obtaining [and maintaining] all necessary local, state and federal licenses and permits required for operation of the Pharmacy." This Court adopts the example of the Supreme Court of Texas in finding that even if parties agree that a contract provides that one party act as the other's agent for certain "specific" purposes, this does not mean that the contract creates an agency relationship "in all matters connected with their relationship." *Nat'l Plan Admin'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 703 (Tex. 2007). In such a situation, following the Supreme Court of Texas, this Court declines to find a "general fiduciary duty." *Id.* at 704.

Secondly, although the Pharmacy Agreements do not explicitly disclaim an agency relationship as a general matter, we have found no relevant authority suggesting that such language is necessary to preclude an agency relationship. The courts consistently emphasize that the most important factor is the extent to which the alleged principal has a "right of control" over the alleged agent, with control for these purposes meaning the power to control the "means and details" of the

---

[4]"The Health Care Facility shall be responsible for obtaining all necessary local, state and federal licenses and permits required for operation of the Pharmacy. Health Care Facility shall issue a Power of Attorney to Cardinal Health for the sole purposes of ordering and purchasing controlled substances on its behalf. In accordance with state or federal law, the Health Care Facility shall have primary responsibility for record keeping and security of controlled substances maintained within its premises . . . . As its agent, the Health care facility shall delegate to Cardinal Health through its pharmacist in charge . . . responsibility for maintaining proper record keeping and security requirements for controlled substances as required by applicable state, local and federal laws." (Pharmacy Agreements at art. II, section 2.01(c)).

15

agent's work. Applying this standard to various fact scenarios, courts have held these means and details to include: 1) the power to hire and fire the agent's employees; 2) the power of supervision over the agent's employees; 3) the power to participate in the daily operations of the agent's work, and 4) the power to give the agent interim instructions once work has begun.

The Pharmacy Agreements, together with the summary judgment evidence taken as a whole, do not show that Valley Baptist had the right of control over the means and details of Cardinal Health's provision of pharmacy services to the hospitals. The Agreements provide that Cardinal Health would "operate [the hospitals'] patient care pharmacy service," "install and maintain . . . processes for the management and operation of [the hospital's] Pharmacy department," including creating its own policy and procedural manuals to meet or exceed various regulatory criteria, and would recruit and hire pharmacy personnel. (Pharmacy Agreements at Preliminary Statements; *id* at art. I, § 1.01(b), (e)). The only contractual limitations on Cardinal Health's ability to manage the means and details of its work are the requirements that it provide all services in compliance "with the written policies of the Health Care Facility" and "all applicable written rules and regulations established by the Health Care Facility." (*Id.* at art.1 § 1.03(a), (b)). This language is akin the contractual language in *Arguello* requiring that franchise stores maintain their businesses according to the standards set forth in the PMAs. *Arguello*, 207 F.3d at 806. The *Arguello* court found that "[t]he clauses of the PMA which state that the franchisee's business operations should be conducted in a consistent manner with the standards of Conoco, Inc." do not "establish that Conoco, Inc. has any participation in the daily operations of the branded stores nor that Conoco, Inc. participates in making personnel decisions." *Id.* at 808. Similarly, Cardinal Health's obligation to follow the general policies and rules and regulations of the hospitals in which they provide pharmacy services

does not make the hospitals a participant in the daily operations of the service provider. Absent evidence to the contrary[5], it is reasonable to assume that these policies "only set basic parameters" for Cardinal Health that "do not affect, much less control" how it exercises its "judgment in performing" its assigned work. *Emtel, Inc.*, 2008 U.S. Dist. LEXIS 77597, at *19; *see also Smith*, 928 S.W.2d at 687 ("Although [the franchisee] was required to follow certain corporate standards, the day-to-day operation of the restaurant in question was delegated fully" to the franchisee.).

Defendants themselves admit the extent to which Cardinal Health, and not Valley Baptist, controlled the provision of pharmacy services. Defendants' counterclaim states that "Cardinal Health exercised control over (and undertook day-to-day responsibility for) the acquisition (purchase), dispensing, and accounting for (including inventory control of), and invoicing of drugs." (Doc. No. 121 at 33). Defendants do not deny that Cardinal Health "operated and managed all aspects of Defendants' pharmacy care services." (*Id.* at 34). Defendants, however, do contend that while Cardinal Health exercised actual control of these various means and details, "the Pharmacy Agreements reserved the right to control to VBMC." (Doc. No. 125 at 4 n.3). In support of this claim, Defendants cite not the Pharmacy Agreements themselves, but paragraph 58 of their Second Amended Answer and Counterclaims. (*Id.*). The Court is at a loss to find any language in this paragraph of Defendants' pleading suggesting that Valley Baptist retained a "right of control" pursuant to the Pharmacy Agreements. More importantly, pleadings alone are insufficient to create an issue of material fact for summary judgment. *See* FED. R. CIV. P. 56(e)(2); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 587 (1986). Thus, the evidence presented by both Plaintiff and Defendants strongly supports

---

[5]Valley Baptist points to no evidence detailing the content or subject of these policies, rules, and regulations.

17

Cardinal Health's contention that no agency relationship existed between the parties because the Pharmacy Agreements delegate control of the means and details of the provision of pharmacy services to Cardinal Health, not Valley Baptist.

For these reasons, the Court finds that Plaintiff did not perform its contractual obligations subject to Defendants' right to control. Since without such a right of control, no agency relationship can exist, *see Thomason v. Collins & Aikman Floorcoverings, Inc.*, 2004 Tex.App. LEXIS 2823, at *12, the Court finds as a matter of law that Cardinal Health did not owe a general fiduciary duty to Valley Baptist. Under Texas law, the existence of a fiduciary duty is an essential element of a breach of fiduciary duty claim. *See In re Segestrom*, 247 F.3d 218, 226 n.5 (5th Cir. 2001). The Court therefore GRANTS Plaintiff summary judgment on Defendants' breach of fiduciary duty claim (Doc. No. 90) and thereby DENIES Defendants' Motion for Partial Summary Judgment Regarding Fiduciary Duty (Doc. No. 110). To the extent that Plaintiff has a pending Motion to Dismiss Defendants' fiduciary duty claim (Doc. No. 90), that Motion is DENIED as moot.

Signed this 14th day of November, 2008.

Andrew S. Hanen
United States District Judge